**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 15-10450 |
| v. | D.C. No. 1:15-cr-00158-JMS-1 |
| KIMO MIKE SIMS, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, Chief Judge, Presiding

Argued and Submitted October 20, 2016
Honolulu, Hawaii

Filed March 7, 2017

Before: J. Clifford Wallace, Jerome Farris,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Watford

## SUMMARY[*]

### Criminal Law

Affirming the district court, the panel rejected the defendant's vagueness challenge to a special condition of supervised release prohibiting him from possessing, distributing, inhaling, or ingesting synthetic cannabinoids.

The panel also held that the district court acted well within its discretion by imposing the synthetic marijuana special condition notwithstanding that the district court also imposed a standard condition prohibiting the defendant from committing any federal, state, or local offense.

### COUNSEL

Shanlyn A.S. Park (argued), Assistant Federal Defender; Peter C. Wolff, Jr., Federal Public Defender; Office of the Public Defender, Honolulu, Hawaii; for Defendant-Appellant.

Chris A. Thomas (argued), Assistant United States Attorney; Florence T. Nakakuni, United States Attorney; United States Attorney's Office, Honolulu, Hawaii; for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

WATFORD, Circuit Judge:

At issue in this appeal is a vagueness challenge to a special condition of supervised release imposed as part of defendant Kimo Sims' sentence. The district court imposed the disputed condition to address Sims' long-term use of marijuana, which played a role in the conduct (distributing methamphetamine) that led to his conviction in this case.

In light of Sims' extensive history of marijuana use, the district court prohibited him from using marijuana while he is on supervised release. To prevent Sims from evading the prohibition by switching to increasingly prevalent synthetic forms of marijuana, the district court imposed the following special condition:

> The defendant shall not knowingly possess, distribute, inhale, or ingest any synthetic cannabinoid, defined as a substance that mimics the effects of cannabis and applied to plant material, often referred to as "synthetic marijuana," "K2," or "Spice," without the prior approval of the court.

Sims objected to the condition on the ground that it failed to give him adequate notice of exactly which substances he is prohibited from ingesting. The district court rejected this argument after receiving full briefing from the parties and conducting a thorough hearing on the issue. We agree that the synthetic marijuana condition is not unconstitutionally vague.

To prevail on his vagueness challenge, Sims must establish that the condition defines the forbidden conduct in terms so vague that it fails to provide people of ordinary intelligence with fair notice of what is prohibited. *United States v. King*, 608 F.3d 1122, 1128 (9th Cir. 2010). He did not meet that burden here. The condition tells him with specificity which substances he is prohibited from possessing, distributing, inhaling, or ingesting—namely, synthetic cannabinoids. True, that term is not used in everyday conversation, but that does not render the condition unconstitutionally vague. The first part—the modifier "synthetic"—has a readily discernible meaning. It refers to man-made (as opposed to naturally occurring) chemical compounds, a concept familiar enough from the distinction between, say, synthetic fibers like polyester and natural fibers like cotton. As for the less familiar part—"cannabinoid"— the district court did not leave Sims to guess at its meaning. The court defined the term in reasonably precise language: any chemical compound that mimics the effects of cannabis and is applied to plant material. The court then clarified the definition of "synthetic cannabinoid" by providing specific examples of what the term is intended to cover: "synthetic marijuana," "K2," and "Spice." Those examples ensure that the condition will be read to encompass only substances similar in character to the examples given, rather than the fanciful examples Sims has offered, such as synthetic hemp rope.

In combination, these terms leave little ambiguity as to what conduct is prohibited. The district court sought to ensure that all forms of synthetic marijuana are covered by the condition, and it provided a definition of that term sufficiently precise to avoid constitutional vagueness concerns.

In response, Sims argues mainly that the condition at issue here is indistinguishable from the condition we struck down on vagueness grounds in *United States v. Aquino*, 794 F.3d 1033 (9th Cir. 2015). However, the two conditions are nothing alike.

The condition in *Aquino* prohibited the defendant from using or possessing "any substance, controlled or not controlled, that you believe is intended to mimic the effect[s] of any controlled substance." *Id.* at 1035. The problem with the condition in *Aquino* was that it swept far more broadly than intended. It covered *any* substance—legal or illegal, man-made or naturally occurring—that the defendant believed mimicked the effects of *any* controlled substance. As we observed, taken literally, the condition would have prohibited the defendant from consuming innocuous everyday substances like coffee or chocolate, even though that could not possibly have been what the district court intended. *Id.* at 1037. But given the potential breadth of the condition's coverage, the defendant was forced to guess as to which substances were actually forbidden and which were not.

We do not have anything resembling that problem here. The district court limited the condition to one specific set of substances—synthetic cannabinoids—and defined with reasonable precision what was meant by that term. No guessing on Sims' part is required.

The only similarity between the condition in *Aquino* and the condition in this case is that both use the phrase "mimics the effects of." But use of that phrase alone is not what rendered the condition in *Aquino* impermissibly vague. The vagueness problem arose there from a combination of two factors: (1) the completely unbounded universe of substances

potentially covered by the condition ("any substance, controlled or not controlled"); and (2) the exceptionally broad "mimics the effects of" clause, which covered any substance that mimicked the effects of *any* controlled substance. Together those aspects of the condition rendered it impossible to know with any certainty which substances the condition was really intended to cover. No such problem exists with respect to the condition imposed here: The mimicking effects language is tied only to the effects of marijuana, and the substance doing the mimicking must itself be a synthetic cannabinoid, a term that, as we have said, is defined with sufficient precision to avoid vagueness problems.

Although unrelated to any concern with vagueness, Sims also argues that the synthetic marijuana condition is redundant, and therefore in his view unnecessary, because the district court also imposed a standard condition prohibiting him from committing any federal, state, or local offense. Since many forms of synthetic marijuana are illegal under federal or state law (or both), Sims contends that the district court should simply have relied on the standard condition to regulate his marijuana use. While the district court certainly could have done that, the court acted well within its discretion by imposing a special condition specifically targeting the use of synthetic marijuana. As the district court pointed out, in certain circumstances it is desirable to impose special conditions tailored to the particular obstacles the court anticipates the defendant may encounter upon release from prison, even if that conduct might also be covered by a more general standard condition. Imposing a special condition tailored to the defendant's individual circumstances allows the court and the Probation Office to focus the defendant's attention on conduct that will not be tolerated—to have, as the court put it, "a clear discussion with them regarding what

is expected of them in a way they can understand it." So long as the condition imposed falls within the constraints imposed by Congress and is not impermissibly vague, we owe substantial deference to the district court's judgment about which conditions are needed to ensure successful supervision of the defendant. *United States v. LaCoste*, 821 F.3d 1187, 1190–91 (9th Cir. 2016).

The effort the district court invested in crafting a condition of supervised release focused on prohibiting Sims' marijuana use—whether in natural or synthetic form—was commendable, given Sims' past history with the drug and the role it played in his commission of the underlying offense. The language of the condition is sufficiently precise to avoid the vagueness concerns we identified in *Aquino*, and the district court did not abuse its discretion by imposing the condition simply because it prohibits conduct also covered by one of the standard conditions of supervised release.

**AFFIRMED.**